UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :         24 Crim. 153 (LGS)
              -against-                                        :
                                                              :         **OPINION & ORDER**
JOHN ARTHUR HANRATTY,                                         :
                                            Defendant.  :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

After a nine-day jury trial, Defendant John Arthur Hanratty was convicted of one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count One); one count of bank fraud, in violation of 18 U.S.C. § 1344 (Count Two), and two counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 (Counts Three and Four, respectively).  Defendant moves (1) to dismiss either of Counts One or Two as multiplicitous of each other and Counts Three and Four as multiplicitous of the fraud counts, (2) for judgment of acquittal under Federal Rule of Criminal Procedure 29(c) and (3) for a new trial under Federal Rule of Criminal Procedure 33 (the "Motions").  The Government opposes. For the reasons below, the Motions are denied.

I.      **BACKGROUND**

All four counts charged in the Superseding Indictment arise from the same general conduct.  Count One alleges that from approximately 2017 to 2021, while soliciting funds through a commercial line of credit for his tax-lien investment firm, Ebury Street Capital, LLC ("Ebury"), Mr. Hanratty committed wire fraud by making false statements about liens that Ebury owned.  The alleged victims of that fraud were Emigrant Business Credit Corporation ("EBCC"), a specialty finance company and wholly owned subsidiary of Emigrant Bank, and Ebury investors.  Count Two separately alleges that Mr. Hanratty committed bank fraud by making

false statements to EBCC to obtain money under the custody and control of Emigrant Bank, an institution with deposits insured by the Federal Deposit Insurance Corporation ("FDIC"). Counts Three and Four allege that, after Mr. Hanratty received money through the schemes charged in Counts One and Two, he initiated two transactions involving those proceeds: a May 17, 2019, transfer involving at least $860,000 in fraud proceeds and a January 13, 2020, transfer involving at least $60,000 in fraud proceeds.

At trial, the Government called eighteen witnesses and introduced hundreds of exhibits. The Government rested its case on July 30, 2025. At the close of the Government's case, the defense moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, on which ruling was reserved. The defense elected to present a case and called three witnesses. Mr. Hanratty elected not to testify. The defense rested its case on July 31, 2025.

On August 4, 2025, after jury instructions and summations, the jury deliberated for approximately one hour and forty-five minutes before returning a verdict of guilty on all counts. Defendant timely filed the Motions on August 25, 2025.

## II.    DISCUSSION

### A.  Multiplicity

Defendant moves to dismiss Counts One and Two as multiplicitous of each other and to dismiss Counts Three and Four as multiplicitous of Counts One and Two. That motion is denied. The wire fraud and bank fraud charges in Counts One and Two are not multiplicitous of each other because each crime requires proof of an element that the other does not. The money laundering charges in Counts Three and Four are not multiplicitous of the fraud charges in Counts One and Two because the money laundering charges are factually distinct from the fraud charges.

### 1. Legal Standard

A defendant may challenge an indictment for "charging the same offense in more than one count." Fed. R. Crim. P. 12(b)(3)(B)(ii). "[M]ultiplicity is grounded in double jeopardy principles, assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *United States v. Kandic*, 134 F.4th 92, 102 (2d Cir. 2025).[1] "A claim of multiplicity cannot succeed . . . unless the charged offenses are the same in fact and in law." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006); *accord United States v. Walker*, No. 23-6876, 2024 WL 4675592, at *3 (2d Cir. Nov. 5, 2024) (summary order).

To determine whether two counts are the same in law, courts ask "whether the offenses charged in the various counts are sufficiently distinguishable from one another to permit a reasonable inference that Congress intended to authorize multiple punishments." *Kandic*, 134 F.4th at 102; *see Barrett v. United States*, 607 U.S. 128, 139-44 (2026). The "touchstone" is "whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes." *United States v. Aquart*, 92 F.4th 77, 100, 103 (2d Cir. 2024) (quoting *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999)).

"The standard for analyzing whether offenses are the same in law is the same-elements test established in *Blockburger v. United States* . . . [which] asks whether each offense contains an element not contained in the other." *United States v. Weingarten*, 713 F.3d 704, 708 (2d Cir. 2013) (discussing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *see Barrett*, 607 U.S. at 138-39. "If there is an element in each offense that is not contained in the other," then the two counts "are not the same offense for purposes of double jeopardy." *Chacko*, 169 F.3d at 146;

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

*accord Walker*, 2024 WL 4675592, at *3 (rejecting multiplicity challenge because each count required proof of a fact that the others did not).

To determine whether two counts are "the same in fact," courts ask "whether a reasonable person familiar with the totality of the facts and circumstances would construe" one count "to include" the other. *United States v. Basciano*, 599 F.3d 184, 197 (2d Cir. 2010). For post-trial motions asserting multiplicity, courts may consider "the record as a whole," not only the indictment in isolation. *United States v. McCourty*, 562 F.3d 458, 469 (2d Cir. 2009); *see United States v. Greenberg*, No. 21 Crim. 92, 2022 WL 827304, at *11 (S.D.N.Y. Mar. 9, 2022) (contrasting pre-trial motion to dismiss).

For double jeopardy purposes, "an unauthorized second conviction, even if it results in no greater sentence, is an impermissible punishment." *Barrett*, 607 U.S. at 142. "If the jury convicts on more than one multiplicitous count," a district court should "enter judgment on only one of the multiplicitous counts" or "vacate the conviction on all but one." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006); *accord United States v. Doe*, No. 22-3108, 2024 WL 1231042, at *4 (2d Cir. Mar. 22, 2024) (summary order).

### 2. Application

#### a. Wire Fraud (18 U.S.C. § 1343) vs. Bank Fraud (18 U.S.C. § 1344)

Counts One and Two are not multiplicitous, applying the *Blockburger* test, because each offense requires proof of a fact that the other does not. Wire fraud requires proof that Defendant transmitted, or caused the transmission of, a wire communication in interstate or foreign commerce. *See* 18 U.S.C. § 1343; *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021). Bank fraud requires proof of a scheme either to defraud a federally insured financial institution or to obtain "moneys . . . or other property owned by, or under the custody or control of, a financial institution." 18 U.S.C. § 1344; *United States v. Hild*, 147 F.4th 103, 110 (2d Cir. 2025).

4

Because these two elements distinguish sections 1343 and 1344, Counts One and Two satisfy the *Blockburger* "same-elements" test and are not multiplicitous.  *See United States v. Reese*, 36 F. Supp. 3d 354, 360-61 (S.D.N.Y. 2014) (holding that sections 1343 and 1344 are not multiplicitous because "it is clear that each contains an element not contained in the other"), *aff'd*, 603 F. App'x 63 (2d Cir. 2015).

Defendant argues that Counts One and Two are multiplicitous because both counts rest on the same alleged scheme to make false statements to EBCC in order to obtain money.  That argument fails.  *Blockburger* turns on statutory elements, not on whether the Government relied on overlapping proof to establish those elements.  *See United States v. Dixon*, 509 U.S. 688, 696 (1993) (reaffirming *Blockburger* "same-elements" test and overruling "same-conduct" test in *Grady v. Corbin*, 495 U.S. 508 (1990)); *United States v. Ullah*, 173 F.4th 399, 435 n.25 (2d Cir. 2026) ("It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' -- in the legal sense, as defined by Congress -- complained of in one count is the same as that charged in another.").  The Government's presentation of Defendant's single course of conduct to prove both counts does not make them multiplicitous.

Defendant argues that the Superseding Indictment is multiplicitous because "as soon as the Government proved bank fraud, it also proved wire fraud."  Specifically, Defendant argues that the counts are multiplicitous because the Superseding Indictment charged that Defendant's wire fraud "affected a financial institution," and because under *United States v. Leslie*, 103 F.3d 1093 (2d Cir. 1997), the defrauded financial institution's federal insurance satisfies wire fraud's interstate-wires element.  These arguments are unpersuasive because the inquiry is not "whether the same conduct underlies the counts," but whether the offense "in one count is the same as that charged in another."  *Ullah*, 173 F.4th at 435 n.25.  As discussed below, the Government's proof

of bank fraud focused on the theory that the property was "owned by, or under the custody or control of, a financial institution" and that the false statement would naturally reach a financial institution or its custodian.  The overlap in evidence that Defendant identifies goes to the Government's proof, not to the statutes' distinct elements, which are determinative here.

### b.  Money Laundering Counts (18 U.S.C. § 1957) vs. Fraud Counts (18 U.S.C. §§ 1343, 1344)

Defendant argues that the Counts Three and Four are multiplicitous of the predicate fraud counts because the § 1957 transactions are, in fact, "the very same transactions" that form the basis of the fraud charges -- namely, two transfers of funds from EBCC to Ebury.  The record does not support this argument.

For Count Three, the Superseding Indictment charges that on May 17, 2019, Mr. Hanratty caused a transfer of at least about $860,000 in proceeds from the fraud charged in Counts One and Two.  The jury charge matched that theory and told the jury that Count Three concerned a May 17, 2019, transfer that occurred "after Mr. Hanratty had received money as part of the wire fraud or bank fraud schemes alleged in Counts One and Two."  The Government's proof established that EBCC deposited approximately $860,000 into Ebury Fund 1's account that day, completing the predicate fraud transaction and generating the proceeds.  The § 1957 transaction was a separate transfer of $1,208,772 -- which included the fraudulent proceeds of $860,000 -- from Ebury Fund 1 to ICE Holdings LLC, a third-party.  Count Three therefore properly targeted a downstream transfer of proceeds, not the fraud transaction that first generated them.  *See, e.g.*, *United States v. Kaplan*, No. 23 Crim. 293, 2025 WL 2200539, at *6 (E.D.N.Y. Aug. 1, 2025) (holding, pre-trial, that alleged use of funds obtained through wire fraud to deposit forged checks and complete wire transfers was "a separate crime" "sufficiently distinct" from the wire-fraud offense).  That these transactions occurred on the same day does not change the result

because "[t]he central inquiry is one of distinctness, not timing." *United States v. Szur*, 289 F.3d 200, 214 (2d Cir. 2002).

Count Four likewise is not multiplicitous of the fraud counts. The Superseding Indictment charges a § 1957 transfer on or about January 13, 2020. The jury charge likewise told the jury that Count Four concerned a January 13, 2020, transfer that occurred "after Mr. Hanratty had received money as part of the wire fraud or bank fraud schemes." The Government proved that on January 10, 2020, EBCC advanced $125,000 into Ebury Fund 2's account, completing the predicate fraud transaction and generating the proceeds. The charged § 1957 transaction was a separate transfer of $60,000 from Ebury Fund 2 to Ebury RE LLC made three days later. That downstream transfer is distinct from the January 10 advance.

Defendant's remaining arguments are unpersuasive. Defendant argues that, under *Vilar* and *Harris*, the May 2019 and January 2020 EBCC advances themselves completed the fraud and therefore had to be the transactions charged in Counts Three and Four. *See United States v. Vilar*, 729 F.3d 62, 95 (2d Cir. 2013); *United States v. Harris*, 79 F.3d 223, 231-32 (2d Cir. 1996). Here, the charged § 1957 transactions were downstream transfers of funds after the fraudulent proceeds already had been obtained. That the fraud was complete once Defendant received the proceeds does not mean that subsequent transfers constitute the same offense for the purpose of multiplicity.

Equally unpersuasive is Defendant's fallback argument that the Government constructively amended the Superseding Indictment by arguing that Defendant's payments to investors, as opposed to receipt of money from EBCC, are the relevant § 1957 transactions. Defendant invokes *Rigas* and *Stirone* for the rule that the proof may not "broaden[] the possible bases for conviction from that which appeared in the indictment." *See United States v. Rigas*,

7

490 F.3d 208, 225-26 (2d Cir. 2007); *Stirone v. United States*, 361 U.S. 212, 217 (1960). Constructive amendment occurs when the trial evidence or the jury instructions so alters "an essential element of the charge" that "it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021); *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018). The Second Circuit has "constantly permitted significant flexibility in proof" so long as the defendant had notice of the "core of criminality," which is "the essence of a crime, in general terms," not "the particulars of how a defendant effected the crime." *Khalupsky*, 5 F.4th at 293.

Here, Counts Three and Four each allege that Mr. Hanratty transferred "at least approximately" a specified dollar amount in fraud proceeds on or about May 17, 2019, and January 13, 2020, respectively. The jury charge tracked the same theory by instructing that on each charged date, after Mr. Hanratty had received money as part of the fraudulent schemes, he transferred or caused others to transfer those funds.

That the Government proved a $1,208,772 transfer from Ebury Fund 1 to a third party, rather than only the $860,000 fraudulent proceeds Ebury had obtained from EBCC earlier that day, does not alter the "core of criminality." *See id.* at 293-94. The gravamen of each count -- the downstream transfer of fraud proceeds to a third party on a specified date -- remained the same in the Superseding Indictment, at trial and in the jury charge. The Superseding Indictment was not constructively amended by the Government's proof.

### B. Rule 29 Motion

Defendant argues that the evidence was insufficient on all counts to prove that he made material misstatements with fraudulent intent. Defendant also moves for acquittal on Count Two (bank fraud), arguing that the Government failed to prove he intended to defraud or obtain

property from Emigrant Bank (the FDIC-insured institution) rather than from EBCC (the non-bank subsidiary).  The motion for acquittal is denied.  Viewing the evidence in the light most favorable to the Government, a rational jury could find that the Government proved each of the elements of the charged offenses beyond a reasonable doubt.

### 1.  Legal Standard

Rule 29 allows a defendant to move for a judgment of acquittal based on insufficiency of the evidence used to convict.  Fed. R. Crim. P. 29(c).  "Jury verdicts are entitled to strong deference in our criminal justice system," and a defendant who challenges the sufficiency of the evidence "bears a heavy burden."  *United States v. Martinez*, 110 F.4th 160, 171 (2d Cir. 2024).  In reviewing the evidence, a court must "draw all permissible inferences and resolve all issues of credibility in favor of the jury's verdict."  *Id*.  This determination requires a court to view the evidence "in its totality, as each fact may gain color from others," and it does not require the Government to "negate every theory of innocence."  *United States v. Landesman*, 17 F.4th 298, 319 (2d Cir. 2021).  The verdict must be upheld if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Martinez*, 110 F.4th at 171.  And "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt may the court enter a judgment of acquittal."  *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021).

### 2.  Application

#### a.  Count One:  Wire Fraud

The evidence was sufficient on Count One.  The Government was required to prove beyond a reasonable doubt:  "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of . . . [interstate] wires to further the scheme."  *United States v. Runner*, 143

F.4th 146, 154 (2d Cir. 2025).  To prove the first element, "the government must prove that the defendant made misrepresentations that were material, and that the defendant acted with fraudulent intent."  *Id.*  "[I]t is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."  *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000); *accord United States v. Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51, 102 (E.D.N.Y. 2023).  The interstate-wires element was established by stipulation.  On this record, a rational jury could find the other two elements satisfied.

A scheme to defraud was amply supported.  Under the credit agreement, Ebury could not obtain a loan advance without a notice of borrowing, a collateral report and a borrowing base spreadsheet listing the liens posted as collateral.  Each request also required certifications about ownership of the listed liens, use of a third-party custodian-servicer for the liens and use of the loan proceeds.  The Government introduced evidence that Mr. Hanratty submitted, or caused the submission of, borrowing base materials that included lists of liens that brokers had listed "for sale" and that Ebury did not own.  Brokers sent Mr. Hanratty "for sale" lists, which he forwarded to an Ebury employee, directing that liens on the lists be included in the borrowing base materials as if Ebury had purchased them.  A compelling example is the January 9, 2020, submission, which Mr. Hanratty personally sent to EBCC representing that Ebury had "bought" the liens listed on an included spreadsheet, which contained liens Ebury did not own.[2]

---

[2] The January 9, 2020, submission remains probative even if it was, as Defendant contends, an "outlier."  Defendant argues that this submission was the only borrowing base certificate he personally submitted, it was sent during the Puerto Rico earthquake disruptions and the disputed worksheet appeared to duplicate a much older worksheet.  Defendant presented these arguments at trial.  A jury still could reasonably find that the submission was direct evidence that Mr. Hanratty personally sent EBCC a borrowing base submission representing that Ebury had "bought" listed liens that Ebury did not own.  The submission is relevant regardless of how

A rational jury could also find materiality.  Materiality is part of the scheme-to-defraud element and turns on whether the false statement or omission "would naturally tend to lead or is capable of leading a reasonable person to change his conduct."  *Runner*, 143 F.4th at 156 n.8; *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017).  Mr. Grady, EBCC's relationship manager on the Ebury loan, testified that it was of "utmost importance" that Ebury own the liens Ebury listed.  Mr. Arora from EBCC testified that because EBCC was "lending the money . . . on the basis of the value of the liens, the liens [had] to be owned by Ebury."  And Mr. Staudt, EBCC's president, testified that ownership was "absolutely critical" and "fundamental" to the loan.  The testimony about custody of the liens was similar:  Mr. Staudt testified that having a servicer and third-party custodian was the "only way" to "validate that the tax liens exist."  Mr. Grady from EBCC testified that a third-party custodian was a "very critical component" of the loan structure and that he never approved self-custody.  And the jury saw evidence that Mr. Milstein, the CEO of Emigrant Bank, approved the loan only after receiving assurance that a third party would have custody of the liens.

A rational jury could also find intent, the second element of wire fraud, based on evidence that Mr. Hanratty directed the content of the borrowing base submissions and knew that they contained liens Ebury did not own.  First, the jury could permissibly have concluded that Mr. Hanratty actively directed what went into the submissions and was aware of their contents.  Mr. Xie, Ebury's comptroller, testified that borrowing base materials would not be submitted without Mr. Hanratty's prior review.  An email from Mr. Hanratty to an Ebury employee on

---

Ebury used the resulting loan proceeds (i.e., to fund operations rather than pay off investors), because the borrowing base submission contained material misrepresentations about Ebury's ownership of the liens.

11

March 21, 2019, stating "we didn't add the portfolio we bought," also supports the reasonable inference that Mr. Hanratty reviewed and was knowledgeable of the content of the spreadsheets.

Second, the evidence showed that Mr. Hanratty concealed false statements, supporting an inference that he knew they were false. When EBCC insisted on a field exam in late 2020, Mr. Hanratty (1) provided updated borrowing base certificates that omitted problematic liens without disclosing that those liens had been removed because Ebury never owned them and (2) failed to provide the books and records needed to verify the collateral, leaving the examiner unable to complete the audit. Additionally, when EBCC asked Ebury for a "[c]ustodial report for the liens" in 2021, Mr. Hanratty sent EBCC a fabricated spreadsheet indicating that MTAG, a third-party custodian and servicer of tax liens, had custody of liens that it did not. The jury here could infer from Mr. Hanratty's control over the submissions and efforts to conceal false statements that he knew the submissions were false and acted with fraudulent intent. *See Hild*, 147 F.4th at 112-13.

The Government also offered motive evidence that could support an inference of fraudulent intent. For example, on November 8, 2018, Mr. Hanratty received a threatening letter from an investor. The next day, Ebury submitted a false borrowing base certificate, obtained a $220,000 loan advance and wired funds immediately to the investor. This evidence also supports intent.

Defendant's contrary arguments do not warrant acquittal. First, Defendant argues that his conduct was merely a breach of contract, not fraud. Specifically, he asserts that Ebury disclosed that it was making investor redemptions and was self-servicing and keeping custody of the liens, that EBCC tolerated those practices, and that mere breaches of the credit documents cannot establish wire fraud. That argument fails because the Government's theory was not simply that

12

Ebury violated the loan agreements. Rather, the Government asserted and introduced evidence that Mr. Hanratty provided EBCC with false documents and false certifications about Ebury's ownership of liens that served as collateral for the loans, Ebury's use of MTAG as custodian and servicer of the liens and Ebury's use of the loan proceeds, all to induce EBCC to maintain the loan and disburse loan proceeds.

Second, Defendant argues that the alleged falsehoods were too minor to support the requirements of materiality or scienter. Defendant notes that only a small subset of borrowing base entries was disputed, over-advances were common and curable, Ebury repaid heavily and Mr. Grady from EBCC described the Ebury loan as one of EBCC's best-performing loans. Defendant made these arguments to the jury, which apparently rejected them. The issue under Rule 29 is whether the evidence as a whole was sufficient to support the jury's findings of materiality and intent. *See Martinez*, 110 F.4th at 171 (asking whether "*any* rational trier of fact could have found the essential elements"); *United States v. Thomas*, No. 22-1508, 2025 WL 2202512, at *4-5 (2d Cir. Aug. 4, 2025) (summary order). Given the evidence that ownership and custody of the liens were critical to EBCC, that Mr. Hanratty submitted (or caused to be submitted) repeated false certifications, that even one inaccurate worksheet could affect borrowing capacity, and that Mr. Hanratty had a motive and engaged in concealment, the evidence was sufficient for a rational jury to find materiality and scienter.

Third, Defendant argues that the Government failed to prove Defendant's contemporaneous knowledge that the borrowing base materials were false when submitted because no trial witness had first-hand knowledge of what Mr. Hanratty knew at that time. Defendant notes that the Government did not call the tax lien broker who sent Mr. Hanratty "for sale" lists or the Ebury employee who prepared and submitted nearly all of Ebury's borrowing

13

base certificates, and that Ebury's recordkeeping was chaotic.  Again, the jury heard similar arguments but rejected them.  In a loan-collateral case like this one, "[d]irect proof of defendant's fraudulent intent is not necessary; rather, intent may be proven through circumstantial evidence."  *Hild*, 147 F.4th at 112.  Here, the evidence was sufficient for a rational jury to find knowledge based on Mr. Hanratty's review and approval role, the timing and content of the for-sale-list emails, his January 9, 2020, personal submission and his later efforts to conceal the collateral problem from EBCC.  Defendant's Rule 29 motion is denied on Count One.

### b.  Count Two:  Bank Fraud

The Rule 29 motion on Count Two is also denied.  To prove bank fraud, the "Government must prove a 'scheme or artifice' to (1) defraud a financial institution, or (2) obtain money or property under the 'custody or control' of a financial institution 'by means of false or fraudulent pretenses, representations, or promises,'" plus knowing participation in the scheme with intent to defraud.  *Id.* at 110-13 (quoting 18 U.S.C. § 1344); *accord United States v. Bouchard*, 828 F.3d 116, 123-24 (2d Cir. 2016).  Under (2), the Government must show that Defendant intended to obtain "any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution" -- that is, intended "to obtain bank property" -- by means of false pretenses, so long as the misrepresentations would naturally reach the bank or a custodian of bank property.  *Bouchard*, 828 F.3d at 126 (quoting *Loughrin v. United States*, 573 U.S. 351, 358, 365 n.8 (2014)).  The evidence was sufficient for a rational jury to make that finding.

A rational jury could find that the same false borrowing base submissions and certifications that supported Count One were the means by which Defendant obtained bank-controlled property for Count Two.  The proof showed that Emigrant Bank's deposits were

federally insured, that Emigrant Bank had "absolute control" over EBCC and that the Ebury line of credit was funded with Emigrant Bank money. Mr. Staudt testified that the loan funds "came from Emigrant Bank," and the Government introduced evidence that EBCC's funds were held in an Emigrant Bank account. Mr. Milstein -- the CEO of Emigrant Bank -- was personally involved in managing the Ebury loan. Mr. Hanratty received communications showing that Mr. Milstein -- whom Mr. Hanratty understood to be the owner of Emigrant Bank -- was directly involved in the loan. Mr. Hanratty also received emails from Emigrant Bank employees -- identified as such in their signature lines -- about the custodian-servicer issue and the allocation of funds. On that record, the jury could find that Mr. Hanratty's misrepresentations were directed at obtaining money under the custody or control of Emigrant Bank and that those false statements would naturally reach Emigrant Bank or custodians of its property.

The same evidence also permits a rational jury to find intent. To prove Count Two, the Government was required to show that Defendant knowingly participated in the scheme with knowledge of its fraudulent nature and with specific intent to defraud. *See Hild*, 147 F.4th at 111-13 (requiring proof that defendant knowingly participated in the scheme "with the intent to perpetrate a fraud"). The proof of intent on Count One supports a finding of intent on Count Two as well -- Mr. Hanratty's review and approval role, the repeated false submissions, the investor-pressure motive, the concealment evidence involving the field exam and the forged MTAG spreadsheet. *See id.* at 112-13.

Defendant's contrary arguments are unavailing. Defendant argues that *Bouchard* bars his conviction because EBCC is a non-bank subsidiary and all communications were with EBCC. However, it is enough that a defendant intended to obtain property "owned by, or under the custody or control of" a federally insured institution and that the false statements would naturally

15

reach the bank or a custodian of its property; it is not required that the defendant targeted the bank itself. *Bouchard*, 828 F.3d at 126. The Second Circuit cautioned that § 1344(2) "should not be read to federaliz[e] frauds that are only tangentially related to the banking system," *id*., but that concern is unfounded here. The Government offered proof that the money EBCC loaned "came from Emigrant Bank" and that EBCC had "no sources of lending capital apart from Emigrant Bank." The Government also offered proof of Emigrant Bank's absolute control over EBCC, the personal involvement in the loan of Mr. Milstein, the CEO of Emigrant Bank, and Mr. Hanratty's direct communications with Emigrant Bank employees about the custodian-servicer issue and the allocation of funds. This evidence was sufficient for a rational jury to find that the fraud reached an FDIC-insured institution, in contrast to *Bouchard*.

Defendant's related arguments that the money belonged to EBCC and not Emigrant Bank, and that Emigrant Bank created EBCC to hold assets that an FDIC-insured entity could not hold, are unavailing. The statute criminalizes obtaining property within a financial institution's "custody or control." 18 U.S.C. § 1344(2). The property is not required to "belong" to the financial institution. The record evidence outlined above -- including that Emigrant Bank had "absolute control" over EBCC and that the Ebury line of credit was funded with Emigrant Bank money -- permits a rational jury to find that the custody-or-control element was satisfied. The motion for judgment of acquittal on Count Two is denied.

### c.  Counts Three and Four:  Money Laundering

The motion is denied as to Counts Three and Four as well. Money laundering under § 1957 "has five elements:  (1) the defendant engaged in a monetary transaction affecting interstate commerce, (2) the transaction involves criminally derived property worth more than $10,000, (3) the property was derived from a specified unlawful activity, (4) the defendant knew the transaction involved proceeds of a criminal offense, and (5) the transaction took place in the

16

United States or the defendant is a U.S. person." *Thomas*, 2025 WL 2202512, at *4 n.3 (citing

18 U.S.C. § 1957). The statute therefore requires proof that the defendant knowingly engaged in

a monetary transaction in criminally derived property worth more than $10,000 derived from

specified unlawful activity. *See United States v. Ross*, 161 F.4th 100, 107 n.5 (2d Cir. 2025).

For the second element, "funds become [criminally derived] proceeds when they are derived

from an already completed offense, or a completed phase of an ongoing offense." *Szur*, 289 F.3d

at 214; *see Kaplan*, 2025 WL 2200539, at *6.

A rational jury could find Defendant guilty on both money laundering counts. The

monetary transaction requirement is satisfied by Ebury's transfer of funds to a third party. The

criminally-derived-property and specified-unlawful-activity elements are satisfied by the jury's

convictions on the fraud counts. For Count Three, the Government proved that on May 17,

2019, EBCC deposited $860,000 into Ebury Fund 1's account based on fraudulent statements,

thereby providing criminally derived property from a specified unlawful activity. Later the same

day, Mr. Hanratty caused a separate transfer of $1,208,772 to ICE Holdings LLC, which was the

unlawful monetary transaction charged in Count Three.

As to Count Four, the predicate fraud rested on the January 9, 2020, borrowing base

submission, which Mr. Hanratty personally sent to EBCC representing that Ebury had "bought"

the liens listed on an included a spreadsheet, which Ms. Mendez, Ebury's director of operations,

confirmed contained liens Ebury did not own. On January 10, 2020, EBCC advanced funds into

Ebury Fund 2's account, completing the predicate fraud transaction and generating the proceeds.

The charged § 1957 transaction was then a separate transfer of $60,000 to Ebury RE LLC on

17

January 13, 2020.  Both transactions exceeded $10,000 in criminally derived property, and the interstate-commerce element was established by stipulation.

The record also supports knowledge.  The same evidence that sustains the intent requirement of the fraud counts satisfies the knowledge requirement of the money laundering counts.  That evidence includes the false borrowing base submissions, the false certifications, the investor pressure, Mr. Hanratty's control over the submission process and Mr. Hanratty's efforts to avoid the field exam.  This evidence supports the inference that Defendant knew that Ebury's payments to the third parties consisted at least in part of funds that had been criminally derived.  The timing of the subsequent third-party transfers reinforces that inference.  The ICE Holdings LLC transfer occurred the same day as the predicate EBCC deposit, and the Ebury RE LLC transfer occurred just three days after the January 10, 2020, advance.  "Knowledge that the transaction involves profits of unlawful activity" may be proved, "as knowledge must almost always be proved[,] by circumstantial evidence."  *United States v. Santos*, 553 U.S. 507, 521 (2008); *accord Thomas*, 2025 WL 2202512, at *5.  A rational jury could treat this sequence as confirmation that Defendant obtained the fraud proceeds in order to make the subsequent transfers.  On this record, the knowledge requirement is satisfied.

Defendant primarily argues that the evidence was insufficient on the money laundering counts because the Government did not sufficiently prove the fraud counts.  This argument is unavailing for the reasons discussed above.

Defendant also argues that the Government's motive theory of investor pressure does not apply because the January 2020 advance was used to fund operating expenses.  To the extent Defendant directs this argument at Count Four, the argument is unavailing.  The Government's proof of motive was circumstantial evidence of Defendant's knowledge and fraudulent intent as

18

to certain fraudulent submissions, as well as his willingness to engage in fraud when necessary. Motive is not an element of wire fraud, bank fraud or money laundering. The jury had adequate evidence that the January 13, 2020, transaction involved proceeds of the fraudulent submission on January 9, 2020, based on the pattern of prior false submissions, Mr. Hanratty's personal submission of the fraudulent materials, his established control over the borrowing base process and his efforts to conceal. Because a rational jury could find each element of Counts Three and Four beyond a reasonable doubt, the motion for judgment of acquittal is denied on both counts.

## C. Rule 33 Motion

Defendant moves for a new trial under Rule 33, noting that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The motion is denied. The evidence supports the jury's verdict, and the case does not present any extraordinary circumstances that warrant a new trial.

### 1. Legal Standard

Rule 33 allows a defendant to move to vacate the judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). A district court "has broad discretion to decide Rule 33 motions based upon its evaluation of the proof produced." *United States v. McPartland*, 81 F.4th 101, 123 (2d Cir. 2023). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* In other words, "there must be a real concern that an innocent person may have been convicted." *Id*. District courts must ensure that "competent, satisfactory and sufficient evidence in the record supports the jury verdict" and may "grant a new trial if the evidence does not support the verdict." *Landesman*, 17 F.4th at 330.

That said, a motion for a new trial should be granted "only in the most extraordinary circumstances." *Id*. "[A] district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be manifest injustice to let the verdict stand." *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020). As *Landesman* explained in vacating the grant of a Rule 33 motion, a district court may not "reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." 17 F.4th at 331. Absent exceptional circumstances -- "for example, [where] the evidence was patently incredible or defied physical realities, where an evidentiary or instructional error compromised the reliability of the verdict, or where the government's case depend[ed] upon strained inferences drawn from uncorroborated testimony" -- a district court must "defer to the jury's resolution of conflicting evidence." *Id*. Finally, a district court "must be careful to consider any reliable trial evidence as a whole, rather than on a piecemeal basis." *Archer*, 977 F.3d at 189.

### 2. Application

This case does not present the kind of extraordinary circumstances warranting Rule 33 intervention. Rule 33 permits a broader inquiry than Rule 29, but no "manifest injustice" would result from allowing the jury verdict to stand. *McPartland*, 81 F.4th at 123. As detailed above, this is not a case lacking in evidence supporting the verdict. Nor is this a case in which the Government's proof was "patently incredible," "defied physical realities" or depended on "strained inferences drawn from uncorroborated testimony." *Landesman*, 17 F.4th at 331.

The jury considered and rejected Defendant's principal themes raised at trial and reiterated in his briefing. The jury heard evidence and argument that the disputed borrowing base materials accounted for only a small percentage of the liens offered as collateral; that Ebury

20

remained a strong-performing loan for EBCC until the pandemic disrupted the market for tax liens; that the Government relied only on circumstantial proof, such as certain emails and spreadsheets, to show Defendant's contemporaneous knowledge and that the evidence showed fraud only on EBCC rather than on Emigrant Bank itself.  Rule 33 does not permit setting aside the verdict simply because another view of the evidence is possible.  *See id.* at 330-31.

Beyond the reiterated trial themes, Defendant identifies no separate reliability problem that might justify a new trial.  Defendant does not cite any evidentiary error that may have compromised the verdict's reliability.  *See id.* at 331.  Nor does Defendant assert any incorrect instruction that might have led the jury to convict on an invalid theory.  *Cf. Hild*, 147 F.4th at 116-17 (affirming conviction where the jury was instructed on both a later-invalidated fraud theory and a still-valid fraud theory because the error did not affect the defendant's substantial rights and caused no "prejudicial spillover").  The Rule 33 motion is denied.

## III.   CONCLUSION

For the foregoing reasons, the Motions are **DENIED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 181.

Dated: May 22, 2026
       New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**